# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

Lotus Industries LLC,

      Debtor.

Case No. 18-40621-MAR
Chapter 7
Honorable Mark A.  Randon

_____/

## TRUSTEE'S MOTION TO SELL DEBTOR'S LIQUOR LICENSE

Charles J. Taunt, Chapter 7 Trustee, through his attorneys, The Taunt Law Firm, files this Motion to Approve a Sale of the Debtor's Liquor License and for Related Relief (the "Motion").  In support of same, the Trustee states as follows:

### General Facts

1.  Lotus Industries, LLC (the "Debtor") filed for relief under Chapter 11 on January 18, 2018 ("Petition Date"). On March 22, 2018, the Court converted the case to a Chapter 7 Bankruptcy (Docket No. 127).

2.  Charles J. Taunt (the "Trustee") is the Chapter 7 Trustee of the Debtor's estate.

3.  On the Petition Date, the Debtor owned certain Class C and SDM liquor licenses issued by the Michigan Liquor Control Commission (the "MLCC"), License No. Class C – 000234943 and SDM 000234947, Business ID No. 234174 and attendant permits (collectively the "Liquor License").  The Liquor License are currently in the Debtor's name, in escrow, and formerly used in connection with a

-1-

business located at 1407 Randolph St., Detroit, MI 48226, Wayne County, Michigan (the "Premises").

4. The Liquor License is property of the bankruptcy estate.

5. Upon information and belief, there are no known encumbrances against the Liquor License, other than charges due to the MLCC.

6. The Trustee has received an offer from Dennis Kefalinos, on behalf of an entity to be formed (the "Purchaser"), which provides for the sale of the Liquor License for $65,000.00.

7. The Purchaser's offer was the highest and best offer received after a thorough effort to market and sell the Liquor License by the Trustee's special liquor license counsel.

8. Subject to Court approval, the Trustee has accepted Purchaser's offer. A copy of the signed purchase agreement is attached as **Exhibit 2** (the "Purchase Agreement").

9. The sale of the Liquor License, as articulated in the Purchase Agreement, is also contingent on approval by the MLCC.

10. Bankruptcy Code §363(b) provides that after notice and a hearing, a Trustee may sell property of the estate.

11. The Trustee asks that the Court approve the sale of the Liquor License pursuant to the terms of the Purchase Agreement and the attached proposed order, as such sale is in the best interests of the bankruptcy estate.

WHEREFORE, the Trustee asks that this Court enter an order in the form attached hereto as **Exhibit 1**.

**THE TAUNT LAW FIRM**

/s/ Dean R. Nelson, Jr.
Attorney for Trustee
700 E. Maple Road, 2nd Floor
Birmingham, MI 48009
(248) 644-7800
dnelson@tauntlaw.com
P70818

Date: October 10, 2018

# Exhibit 1 – Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

Lotus Industries LLC,                              Case No. 18-40621-MAR
                                                   Chapter 7
                                                   Honorable Mark A.  Randon

         Debtor.

_____/

## ORDER GRANTING TRUSTEE'S MOTION TO
## SELL DEBTOR'S LIQUOR LICENSE

Chapter 7 Trustee, Charles J. Taunt (the "Trustee"), having filed a Motion to

Approve a Sale of the Debtor's Liquor License and for Related Relief (the

"Motion"), the Trustee having served parties in interest with notice of the Motion,

and no objections to the Motion were timely filed, and the Court otherwise being

fully informed of the matter before it, now therefore, the Court hereby orders as

follows:

1.      The Trustee is authorized to sell the Bankruptcy Estate's interest in the Class

C and SDM liquor licenses issued by the Michigan Liquor Control Commission

(the "MLCC"), License No. Class C – 000234943 and SDM 000234947, Business

ID No. 234174 and attendant permits (collectively the "Liquor License"), which are

currently in the Debtor's name, in escrow, and formerly used in connection with a

business located at 1407 Randolph St., Detroit, MI 48226, Wayne County, Michigan.

2.      The sale of the Liquor License to Dennis Kefalinos, on behalf of an entity to be formed (the "Purchaser"), for $65,000.00, is approved upon the terms of the Purchase Agreement attached as Exhibit 2 to the Motion.

3.      The Trustee may execute any documents or agreements and perform any acts that may be necessary and appropriate to implement, effectuate, and consummate the sale approved herein and as required under the Purchase Agreement.[1]

4.      The Trustee is authorized to pay any and all outstanding charges, fees, fines, or costs of the Debtor or the Bankruptcy Estate, which are payable to the MLCC and which must be paid as a condition of the MLCC authorizing the transfer of the Liquor License to the Purchaser, as any such outstanding charges, fees, fines, or costs are deemed encumbrances against the Liquor License.

5.      All federal, state, and local governmental agencies and departments are ordered and directed to accept all filings necessary and appropriate to consummate the transactions contemplated by this Order.

---

[1] Capitalized terms not defined herein have the meaning assigned in the Motion.

6.      The Purchaser of the Liquor License is a good-faith purchaser for purposes of

11 U.S.C. §363(m).

# Exhibit 2 – Purchase Agreement

THIS LIQUOR LICENSE PURCHASE AGREEMENT is entered into on this $\underline{28^{th}}$ day of September, 2018 ("Effective Date") by and between **Charles Taunt, Duly Court Appointed Chapter 7 Bankruptcy Trustee of Lotus Industries, LLC, whose address is 700 E. Maple Road Birmingham, Michigan 48009 ("Seller"), and Dennis Kefalinos, on behalf of an entity to be formed, whose address is 1600 Clay Detroit, Michigan 48211 ("Purchaser") (collectively, the "Parties").**

## RECITALS

I.  Seller owns a certain Class C and SDM liquor licenses issued by the Michigan Liquor Control Commission ("MLCC") (License No. Class C- 000234946 and SDM 000234947, Business Id. No. 234174), which licenses and attendant permits, if any (collectively, the "Liquor License"), are currently in Seller's name, and formerly used in connection with a business located at 1407 Randolph Street detroit, Michigan 48226, Wayne County, Michigan (the "Premises");

II. Subject to approval of the United States Bankruptcy Court, MLCC and other governmental authorities necessary to transfer the license, Seller wishes to sell the License to Purchaser and Purchaser wishes to purchase the License.

## AGREEMENT

In consideration of the mutual covenants, representations, warranties, and above recitals which are incorporated by this reference, and agreements set forth herein, the parties agree as follows:

A.  *Sale of License.*  Purchaser shall buy from Seller, and Seller shall sell, grant and assign to Purchaser, the License, upon the terms of this Agreement. At closing, Seller shall sell, convey, assign and transfer to Purchaser and Purchaser shall accept assignment and transfer of all of Seller's right, title and interest in and to the License. The License must be free and clear from all liens, encumbrances, liabilities, and any and all obligations whatsoever.

B.  *Purchase Price for License.*  The purchase price for the License shall be **Sixty Five Thousand and 00/100s ($65,000.00) Dollars** and shall be paid in cash at closing.

C.  *Deposit.*  Within two (2) business days after Purchaser acknowledges receipt of a fully signed copy of this Agreement, the Purchaser will deposit the sum of **Five Thousand and 00/100s ($5,000.00) Dollars** (the "Deposit") with Seller. The Deposit will be applied to the Purchase Price if this transaction is consummated, repaid to Purchaser subject to the default provisions in this Agreement or paid to Seller in accordance with the terms of this agreement.

D.  *MLCC Compliance, Approvals and Closing.*  The closing of the transactions contemplated by this Agreement (the "Closing") shall occur as follows:

1)  Seller and Purchaser agree to take whatever steps shall be necessary, in a diligent and expeditious manner, to have the Liquor License transferred to Purchaser. Seller and Purchaser all agree to work cooperatively with the MLCC, the local municipality, and the local law enforcement agency in their respective investigations of the transfer and to promptly execute and deliver any legal instruments and applications of any nature or kind

18-40621-mar    Doc 251    Filed 10/10/18    Entered 10/10/18 15:44:31    Page 9 of 14

which may be necessary to effect and consummate this transaction. It is understood that time is of the essence. Seller agrees to submit a petition for approval of the sale directly to Purchaser to the United States Bankruptcy Court, Eastern District of Michigan ("Bankruptcy Court") on an expedited basis within three (3) business days from full execution of this Agreement. Purchaser agrees to file with the MLCC its application for transfer of the Liquor License within seven (7) days after an order has been entered by the Bankruptcy Court approving the sale of the License to Purchaser by the Seller, the "Court Approval Date". Purchaser shall endeavor to secure the approval of the transfer by the MLCC, the local municipality, and the local law enforcement agency within four (4) months from the Court Approval Date. If the MLCC, the local municipality, or the local law enforcement agency has not completed its investigation and approval process by such date, and provided that Purchaser is diligently pursuing the requirements to transfer the License, then the parties agree to extend the Closing an additional sixty (60) days (the combined periods are hereinafter referred to as the "Due Diligence Period"). In the event of governmental inaction, additional extensions of time to close shall not be unreasonably withheld.

If the Bankruptcy Court denies the Seller's petition seeking approval to sell the License to Purchaser, then Purchaser's Deposit shall be immediately released and paid back to Purchaser and this Agreement shall be deemed automatically void with both parties released from any further obligations hereunder.

b) If the MLCC shall refuse to approve the transfer of the License to Purchaser or if Purchaser has not obtained the consent of the MLCC and the local municipality for the transfer of the license within four (4) months from the Court Approval Date, Purchaser may elect to: (i) terminate this Agreement and upon such termination, Purchaser's deposit shall be returned to Purchaser; (ii) pay to Seller an additional deposit of Twenty **Thousand and 00/100s ($20,000.00) Dollars** and upon such payment this Agreement shall be deemed to be extended an additional sixty (60) days (upon payment of said additional deposit, the initial deposit and the additional deposit paid shall be deemed nonrefundable except for a default by Seller and the initial deposit and the additional deposit shall be applicable to the purchase price.); (iii) assign Purchaser's rights in this agreement to any third party and upon such assignment, the Deposit shall be paid to Seller and Seller will acknowledge said assignment; (iv) prior to four (4) months from the Court Approval Date or prior to six(6) months from the Court Approval Date if so elected by Purchaser, permit Seller to place the License in escrow with the MLCC and the parties shall execute an agreement to transfer Seller's rights of escrow in the License whereby Seller will continue the License in escrow with the MLCC and shall cooperate in good faith to continue said License in escrow until such time that the License is transferred to Purchaser or the rights to maintain the License in escrow expire by statute or rule. During said escrow period, Purchaser shall timely pay any and all MLCC annual escrow renewal fees. Upon the execution of the agreement to transfer Seller's rights of Escrow in the License, Purchaser shall pay to Seller the balance of the Purchase Price and Seller shall execute an agreement for the benefit of Purchaser which would allow Purchaser to execute any and all MLCC documents pertaining to the renewal of the escrow and all other documents that Purchaser reasonably deems necessary to transfer the License to Purchaser as set forth in Section G of this Agreement. If the MLCC denies Purchaser's application for approval, then Purchaser may, but shall not be obligated to, appeal the final decision of the MLCC to the Circuit Court. At all times, Purchaser shall be allowed

to assign or transfer any of its rights under this Agreement by giving notice to Seller of such assignment or transfer provided that Purchaser shall remain liable to Seller pursuant to the terms herein.

E. This transaction shall be consummated the earlier of: (i) within ten (10) days after Purchaser receives from the MLCC and the local municipality final written transfer approval of the License to Purchaser; (ii) full satisfaction of all the conditions precedent, (iii) four (4) moths or six(6) months from the Court Approval Date, if extended, or (iii) upon execution of the agreement to transfer Seller's rights of Escrow in the License (collectively the "Closing and sometimes the Due Diligence period"). The Purchaser shall have and take possession of the License or have the Seller's rights to escrow of the License at Closing. The Closing shall take place at the office of Purchaser's attorney.

F. Seller, at Seller's sole cost and expense, agrees to continue the escrow of the license and seek from the MLCC any extensions of time for renewal of the License or extension of escrow if necessary, for the implementation of this Agreement.

G. **Closing Delivery.** At Closing, the Seller shall execute and deliver to Purchaser, among other necessary documents and/or instruments, all satisfactory to Purchaser, the following:

1) Oder Approving Sale to Purchaser from the Bankruptcy Court free and clear of all liens.

2) Bill of Sale containing the usual warranties and affidavit of title.

3) Documents and/or instruments required by the MLCC including, but not limited to, an Assignment of Interest in License.

4) Any and all other documents reasonably necessary to implement the terms of this Agreement.

H. **Representations and Warranties of Seller.** For the purpose of inducing Purchaser to enter into this Agreement and to consummate the transactions contemplated hereby, Seller, to the best of Seller's actual knowledge, hereby represents, warrants and agrees that:

1) Seller alone has the authority and has taken all actions necessary to authorize it to execute, deliver and perform this Agreement and to transfer the License to Purchaser.

2) Seller will transfer and assign at the time of Closing, the License free and clear of all claims, encumbrances, liens, pledges, charges, security interests, rights of third parties or other interests of any kind or character.

3) The License is in good standing with the MLCC and other appropriate governmental entities and agencies, and Seller will not seek to cancel the license during the pendency of this Agreement.

4) Seller has all necessary power and authority under the State of Michigan to enter into this Agreement with Purchaser, to convey the License to Purchaser and to perform its other obligations under this Agreement.

5) That the Seller has a complete and unrestricted power to sell, transfer and deliver to the Purchaser the License and shall renew the license prior to expiration and shall use its best efforts to continue the license to be maintained in escrow until it is transferred to Purchaser.

I. ***Representations, Covenants and Warranties of Purchaser.*** Purchaser represents, covenants and warrants the following to be true:

1) Purchaser is or will be as of the date of Closing a Michigan Corporation in good standing. Purchaser shall provide Seller with proper documents authorizing this transaction and granting the individual(s) executing this Agreement and the closing documents the authority to enter into and consummate this transaction and bind the Purchaser all updated to the date of closing.

2) Purchaser is aware of the rules and regulations of the MLCC regarding the qualifications for owning a License and is not aware of any reasons directly relating to Purchaser for denial by the MLCC of transfer of the License to Purchaser.

3) The foregoing representations and warranties are made by Purchaser with the knowledge and expectation that Seller is placing complete reliance on them.

J. ***Conduct of Seller Prior to Closing.*** From the date of execution of this Agreement until the closing date neither the Seller, nor any of its employees, agents or attorneys shall, without the written consent of the Purchaser:

1) Sell or otherwise dispose of the License.

2) Mortgage, pledge, create a security interest in or otherwise encumber the License.

3) Act in any manner which may adversely affect the License.

4) Cancel or seek the cancellation of the License.

K. ***Conditions Precedent.*** The obligations of Purchaser hereunder are subject to the satisfaction, as is determined in Purchaser's sole and absolute discretion, on or before the closing date, of all the following conditions precedent. However, Purchaser may waive any of the conditions, in whole or in part, without prior notice, provided, however, that no such waiver of a condition shall constitute a waiver by Purchaser of any of its other rights or remedies, at law or in equity, if Seller shall be in default of any of their representations, warranties, or covenants hereunder:

1) Purchaser obtaining the written consent of the MLCC and the local municipality for the transfer of the License to Purchaser and the transfer of location to Purchaser's designated location.

2) The granting of the transfer of the License and the transfer of the location, and the issuance by all other governmental and/or municipal authorities of any license needed by Purchaser for the operation of the License.

3) All of Seller's representations, warranties and agreements contained herein shall be true and correct as of the date of closing, which Seller shall certify to Purchaser at closing, and Seller

shall not have on the date of closing failed to meet, comply with, or perform, any condition or agreement on its part to be performed under the terms and conditions contained herein.

4) At the time of Seller's execution of this Agreement, Seller shall furnish a duplicate original of any documents authorizing Seller to enter into and to consummate this transaction and authorizing the individual signing on behalf of the Seller to bind the Seller to the terms of this Agreement.

L. *Default.* If Purchaser wrongfully refuses to comply with and complete the purchase of the License in conformity with the terms of this Agreement, or the License is denied for any misrepresentation of Purchaser made herein or to the MLCC, then Purchaser shall forfeit the Deposit recited herein as Seller's sole remedy and as liquidated damages. If Seller wrongfully refuses to comply with and complete the sale of the License in conformity with the terms of this Agreement, then Purchaser may seek a return of its deposit as Purchaser's sole remedy. In the event that any litigation arises as result of any breaches or enforcement of this Agreement, the non-prevailing party shall pay to the prevailing party any and all actual attorney's fees and costs.

M. *Miscellaneous.*

1) Expenses and Taxes. Except as otherwise provided for herein, all expenses incurred in connection with this Agreement or the transactions herein provided for shall be paid by whichever party incurs such expenses.

2) Amendments. This Agreement may be amended or supplemented by additional agreements, articles or certificates, as may be mutually determined by the parties to be necessary, desirable or expedient to further the purposes of this Agreement, or to clarify the intention of the parties hereto, or to add or modify the covenants, terms and conditions contemplated by this Agreement or to effect or facilitate the consummation of any of the transactions contemplated hereby; provided, however, that any such amendment or supplement must be in writing signed by the parties hereto.

3) Integration. This Agreement sets forth the entire agreement and understanding between the parties as to the subject matter hereof and supersedes all prior and/or contemporaneous discussions, representations, amendments or understanding of every kind and nature between them.

4) Waiver. No waiver of any of the obligations or representation or warranties contained herein shall be effective for any purpose unless the same shall be in writing and signed by all of the parties hereto. The waiver by any party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent or continued breach.

5) Notice. All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given if delivered or mailed, first-class postage prepaid to the addresses above, or to any other address that Purchaser or Seller shall designate in writing.

6) Assignability. This Agreement may be assigned by Purchaser provided that Purchaser gives written notice of such assignment and agrees to remain liable pursuant to the terms of this Agreement.

7) Applicable Law. This Agreement shall be interpreted in accordance with the laws of the State of Michigan.

8) Severability. If any provision of this Agreement is found to be invalid or unenforceable, it shall not affect the validity of the balance of this Agreement which shall remain valid and enforceable according to its terms.

9) Benefit. This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, legal and personal representatives, successors and assigns.

10) Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be enforceable against the party actually executing such counterparts and all of which together shall constitute one instrument.

11) Captions. Captions contained in this Agreement are inserted for reference and in no way define, limit, extend or describe the Agreement or the intent of any provision herein.

12) Broker. Seller and Purchaser hereby hold each other harmless from any claim of any broker not disclosed that makes a claim through such party.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

Seller:

By: Charles Taunt
    Court Appointed Chapter 7
    Bankruptcy Trustee
    for Lotus Industries, LLC

Purchaser: On behalf of an entity to be

By: Dennis Kefalinos